**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| PATENT ARMORY INC.<br><br>    Plaintiff<br><br>v.<br><br>RADISSON HOSPITALITY, INC<br>    Defendant. | Civil Action No: 6:23-cv-00604-ADA |

## **DEFENDANT RADISSON HOSPITALITY, INC.'S MOTION TO DISMISS**

Defendant Radisson Hospitality, Inc. ("Radisson") files this Motion to Dismiss the Second Amended Complaint filed by Plaintiff Patent Armory Inc. ("Plaintiff") under Federal Rule of Civil Procedure 12(b)(6).

## <u>**TABLE OF CONTENTS**</u>

I.     INTRODUCTION ...................................................................................................... 4

II.    ARGUMENT ............................................................................................................. 5

    A.    Legal Standard .............................................................................................. 5

    B.    Patentability .................................................................................................. 6

    C.    Exemplar Claims of the Asserted Patents ..................................................... 7

    D.    Analysis Under *Alice* Step One ................................................................... 8

        1.    The asserted claims disclose a routine human activity, namely the rational decision-making model ................................................................. 8

        2.    The asserted claims disclose a routine computer activity, namely selecting a destination for a message from a plurality of possible destinations. ................................................................................. 10

        3.    Even if limited to routing calls to call center agents, the claims are still directed to an abstract idea ............................................................... 13

    E.    Analysis Under *Alice* Step Two .............................................................. 15

        1.    The individual elements of the asserted claims fail to add an inventive concept to the claims' abstract idea. ......................................... 15

        2.    The asserted claims, when taken as a sequence, fail to provide an inventive concept to the claims' disclosed abstract idea. ........................ 19

III.    CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*24/7 Customer, Inc. v. LivePerson, Inc.*,
    No. 15-CV-02897-JST, 2017 WL 2311272 (N.D. Cal. May 25, 2017) .................... 14, 16

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
    838 F.3d 1266 (Fed. Cir. 2016).......................................................................... 16

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014)........................................... 6, 9, 10, 11, 12, 13, 15, 18, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)............................................................................................ 5

*Berkheimer v. HP Inc.*,
    881 F.3d 1360 (Fed. Cir. 2018)........................................................................... 8

*ClearDoc Inc. v. RiversideFM Inc.*,
    No. CV 21-1422-RGA, 2022 WL 3355960 (D. Del. Aug. 15, 2022)............................. 15

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................................... 6

*Enfish LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016)........................................................................... 6

*Genetic Techs. Ltd. v. Merial LLC*,
    818 F.3d 1369 (Fed. Cir. 2016)........................................................................... 5

*Health Discovery Corp. v. Intel Corp.*,
    577 F. Supp. 3d 570 (W.D. Tex. 2021)............................................................... 5

*Identity Sec. LLC v. Apple Inc.*,
    No. 1:22-CV-58-LY, 2022 WL 16641851 (W.D. Tex. Nov. 2, 2022) ........................... 18

*Intell. Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)........................................................................ 15

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016)................................................................... 10, 13

*Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*,
    No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938 (E.D. Tex. Mar. 8, 2017) .................. 8

*Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.*,
    114 F.Supp.3d 192 (D. Del. 2015) ................................................................. 8, 14

*RingCentral, Inc. v. Dialpad, Inc.*,
    372 F. Supp. 3d 988 (N.D. Cal. 2019) ..................................................... 11, 13

*Rodriguez v. Rutter*,
    310 F. App'x 623 (5th Cir. 2009) ................................................................. 5

*Twilio, Inc. v. Telesign Corp.*,
    249 F. Supp. 3d 1123 (N.D. Cal. 2017) ................................................. 12, 13

*Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ................................................................. 9, 19

*Voip-Pal.Com, Inc. v. Apple Inc.*,
    411 F. Supp. 3d 926 (N.D. Cal. 2019) ....................................................... 11

**Statutes**

35 U.S.C. §101 ............................................................................................... 5, 6, 19

35 U.S.C. §112(b) ................................................................................................. 9

**Rules**

Fed. R. Civ. P. 10(c) ............................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 5

## I.      INTRODUCTION

Plaintiff continues to shift its defective patent infringement claims, but it cannot avoid dismissal. Plaintiff filed this case on August 16, 2023, alleging that Radisson infringes one or more claims of five different patents.  Dkt. 1.  After a letter detailing why the infringement allegations were fatally deficient, on December 5, 2023, Plaintiff filed a First Amended Complaint, narrowing the patents allegedly infringed by Radisson to U.S. Patent No. 7,023,979 (the "'979 Patent") and U.S. Patent No. 9,456,086 (the "'086 Patent") (collectively, the "Asserted Patents") and revising its claim charts to point to different allegedly infringing activity.  Dkt. 14.  Radisson filed a motion to dismiss the First Amended Complaint on December 19, 2023.  Dkt. 16.  On January 5, 2024, rather than respond to Radisson's motion, Plaintiff filed a Second Amended Complaint.  Dkt. 18. The Second Amended Complaint made de minimis changes to the complaint and further shifted some of its theories in the accompanying claim charts, but none of these changes addressed the fundamental problem for Plaintiff: the asserted claims are directed to patent ineligible subject matter.  Based on the exemplar asserted claims found in the claim charts attached to the Second Amended Complaint, Plaintiff generally alleges that Radisson's customer service call center system is the accused instrumentality and that the alleged infringement occurs generally when incoming calls and customer service requests arrive at the center and are distributed to call center agents.  Such matching and distribution of customer calls has been happening since the inception of the switchboard and telephone operator well over a century ago.

As set forth in this Motion, the claims of the Asserted Patents fail to claim patentable subject matter.  The claims facially disclose routine human activity, and moreover, even if the claims of the Asserted Patents are construed most favorably to Plaintiff, at most they disclose call routing activities which have been characterized as abstract by other courts.  Further, notwithstanding the presence of seemingly technical language, the claims fail to disclose an

4

inventive concept.  As such, the claims reflect abstract ideas without any inventive concept, and as such, are invalid under 35 U.S.C. §101 as failing to disclose patentable subject matter.

## II.      ARGUMENT

### A.      Legal Standard

To withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the [party] pleads factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In ruling on a Rule 12(b)(6) motion, generally a court may not go outside of the complaint, however, exhibits to the complaint may be considered since they are a part of the complaint. Fed. R. Civ. P. 10(c).  Further, a court may consider documents attached to a motion to dismiss if they are referred to in the complaint and are central to the plaintiff's claim.  *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009) (citations omitted).

Dismissal under Rule 12(b)(6) is proper in a patent infringement lawsuit if the claims of the Asserted Patents fail to meet the requirements of §101.  *E.g., Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("it is possible and proper to determine patent eligibility under 35 U.S.C. §101 on a Rule 12(b)(6) motion").  While in some instances it may be necessary to construe claims before determining subject matter eligibility, claim construction is not an "inviolable prerequisite" to a §101 determination under Rule 12(b)(6).  *Id.* at 1374.  This Court has noted that deciding §101 issues at the Rule 12(b)(6) stage may require certain factual presumptions that favor the non-movant.  *Health Discovery Corp. v. Intel Corp.*, 577 F. Supp. 3d 570, 576 (W.D. Tex. 2021) ("a court considering a Rule 12(b)(6) motion must accept a complaint's

factual allegations as true, a complaint can recite concrete allegations regarding [the] underlying factual issues to guard its asserted patents from an early ineligibility determination").

### B.     Patentability

The Patent Act sets the basis for patentability:

> Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title.

35 U.S.C. § 101.  As set forth by the Supreme Court, first courts must consider whether or not the claims of the purported invention are directed to laws of nature, natural phenomena, or abstract ideas.  *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014).  If the claims fall into one of those categories, then courts must consider the elements of each claim both individually and as an ordered combination to determine whether any additional elements provide an inventive concept sufficient to transform it into a patent-eligible claim.  *Id.*

The line between *Alice* steps one and two is sometimes blurry, however, as the Federal Circuit has explained, step one involves looking at the focus or purpose of the claims and to the fundamental concept they convey.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  In determining if a given claim is abstract, courts may look to previously adjudicated claims that are similar to the instant claims, and which were determined by the court to be abstract during an *Alice* step one analysis.  *Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334-35 (Fed. Cir. 2016) (first step of *Alice* test can be satisfied by comparing claims at issue to those claims already found to be directed to abstract ideas in previous cases).  If the claim is deemed to be an abstract idea in step one, step two involves a detailed look for an inventive concept beyond the abstract idea.  *Elec. Power*, 830 F.3d at 1354 ("When we turn to stage two of the *Alice* analysis and scrutinize the claim elements more microscopically, we find nothing sufficient to

remove the claims from the class of subject matter ineligible for patenting.").

### C.     Exemplar Claims of the Asserted Patents

Plaintiff charted independent claim 10 and dependent claim 11 of the '979 Patent, and independent claim 11 and dependent claim 18 of the '086 Patent.  The independent claims are representative of the abstract ideas claimed in each Asserted Patent, and are reproduced below:

'979 Patent, Claim 10

> A communications method comprising:
> > (a) receiving a plurality of communications, each having associated classification information;
> > (b) storing information representing characteristics of a plurality of potential targets;
> > (c) determining an optimum target for each communication based on the communication classification and target characteristics using a multivariate cost function comparing at least three potential targets; and
> > (d) routing the communication to the optimum target, said determining step and said routing step being performed within a common operating environment.

Dkt. 18-1 at 85:67 – 86:11.

'086 Patent, Claim 11

> A method for matching a first entity with a second entity, comprising:
> > storing a plurality of multivalued scalar data representing inferential targeting parameters for the first entity;
> > storing a plurality of multivalued scalar data of each of the plurality of second entities, representing inferential targeting parameters for a plurality of second entities;
> > performing using an automated processor, based on at least the stored plurality of multivalue scalar data, an economic optimization seeking to maximize a normalized economic surplus of a respective mutually exclusive match of the first entity with the second entity, in conjunction with an opportunity cost of the unavailability of the second entity as a result of the match; and outputting a signal in dependence on the optimization.

Dkt. 18-2 at 76:22-36.

"The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and all the claims are substantially similar and linked to the same abstract idea." *Phoenix Licensing, L.L.C. v. Consumer Cellular, Inc.*, No. 2:16-CV-0152-JRG-RSP, 2017 WL 1065938, at *8 (E.D. Tex. Mar. 8, 2017), *report and recommendation adopted,* No. 216CV00152JRGRSP, 2017 WL 1177988 (E.D. Tex. Mar. 30, 2017) (quoting *Pragmatus Telecom, LLC v. Genesys Telecommunications Labs., Inc.*, 114 F.Supp.3d 192, 198 (D. Del. 2015)); *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018) ("Courts may treat a claim as representative in certain situations, such as if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim or if the parties agree to treat a claim as representative.") (citations omitted).

### D.     Analysis Under *Alice* Step One

#### 1.     The asserted claims disclose a routine human activity, namely the rational decision-making model.

If a claimed process can be performed by a human, it qualifies as an abstract idea. *Mortg. Grader Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016).  In *Mortg. Grader*, the court considered claims comprising a series of steps, including "borrower applies for a loan, a third party calculates the borrower's credit grading, lenders provide loan pricing information to the third party based on the borrower's credit grading, and only thereafter (at the election of the borrower) the borrower discloses its identity to a lender." *Id.*  The court concluded that, notwithstanding an express limitation of "a computer system that provides" the required series of steps, those steps "could all be performed by humans without a computer." *Id.*

Here, each of the claims charted in the exhibits to the Second Amended Complaint disclose the steps of the human rational decision-making process: (1) identify a problem, (2) identify

multiple solutions, and (3) pick a solution based on some quantifiable metric.  *See, e.g.*, *How can you use the rational model of decision-making to improve your leadership?*, https://www.linkedin.com/advice/3/how-can-you-use-rational-model-decision-making (last visited on 12/19/2023).  This process is exercised on Friday nights in the fall when a high school quarterback picks out a receiver, in restaurants when a guest picks an entrée, and on playgrounds when an appointed team captain picks the players for his or her kickball team.

The rational decision-making model may be seen in each of the exemplar asserted claims:

| Claim | Focus |
|---|---|
| '979 Patent Claim 10 | Given a communication to be routed and a plurality of potential targets, determine the optimum target based on the communication's classification and characteristics of the potential targets. |
| '086 Patent Claim 11 | Given a first entity and a plurality of second entities, determine the best match between the first entity and one of the second entities based on data associated with the first entity and/or[1] second entity. |

Further, while the language of some of these claims hint at the use of computers—for example, "an automated processor" and "a common operating environment"—at *Alice* step one, where the focus is on the claim character as a whole, invocation of a computer does not transform an otherwise routing human activity into a patent-eligible subject matter.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) ("Claims directed to generalized steps to be performed on a computer using conventional computer activity are not patent eligible.").

---

[1] Claim 11 is likely indefinite under 35 U.S.C. §112(b) as it discloses "a plurality of multivalued scalar data" associated with both the first and second entities, but it does not disclose which "plurality of multivalued scalar data" is used in the determining step.  However, even if the Court were to re-write this claim to make it definite, the focus of the claim remains the same.

Because each of the exemplar asserted claims merely describe the routine human activity of picking a solution to a problem from a set of possible solutions, each of the claims represent an abstract idea and as such must be analyzed further under *Alice* step two.

> **2.     The asserted claims disclose a routine computer activity, namely selecting a destination for a message from a plurality of possible destinations.**

Even if the Court were to determine, in the claim construction phase, that the focus of each of the asserted claims was not a routine human activity but rather a more specific process of using a computer to route a message to a destination, the claims are nonetheless abstract under *Alice* step one.  In *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1313 (Fed. Cir. 2016), a Federal Circuit panel considered a claim that the plaintiff argued disclosed receiving an email, characterizing the email on its content, and then determined whether to forward the email to a destination based on the email content.  The panel noted that "it was long-prevalent practice for people receiving paper mail to look at an envelope and discard certain letters, without opening them, from sources from which they did not wish to receive mail based on characteristics of the mail." *Id.* at 1314.  It concluded that "receiving e-mail (and other data file) identifiers, characterizing e-mail based on the identifiers, and communicating the characterization—in other words, filtering files/e-mail—is an abstract idea." *Id.* at 1313.

The panel also considered a second claim for receiving, screening, and distributing email. *Id.* at 1316-1317.  The panel analyzed the claim to corporate mailrooms which "receive correspondence, keep business rules defining actions to be taken regarding correspondence based on attributes of the correspondence, apply those business rules to correspondence, and take certain actions based on the application of business rules." *Id.* at 1317.  The panel determined that "with the exception of generic computer-implemented steps, there is nothing in the claims themselves

that foreclose them from being performed by a human, mentally or with pen and paper" and deemed the claims as abstract ideas requiring further analysis under *Alice* step two.  *Id.* at 1318.

Similarly, in *Voip-Pal.Com, Inc. v. Apple Inc.*, 411 F. Supp. 3d 926, 952 (N.D. Cal. 2019), *aff'd*, 828 F. App'x 717 (Fed. Cir. 2020), the district court considered a claim which disclosed routing a computer communication based on the characteristics of the participants:

> The steps in the method include (1) receiving identifiers associated with the first and second participants when a communication is initiated, (2) searching a database using the first participant identifier and locating a collection of attributes associated with the first participant, (3) processing the second participant identifier using at least one first participant attribute to produce a new second participant identifier, (4) classifying the communication as a "system communication" or an "external network communication" "based on" the new second participant identifier, and (5) producing a "routing message" that causes the communication to be established either within the system or through a gateway to an external network.

However, as set forth below, the claim recites nothing more than result-focused steps and generic technology.  The court concluded that despite a seemingly complex series of actions, the claim was "directed to the abstract idea of routing a communication based on characteristics of the participants."  *Id.* at 955.

In *RingCentral, Inc. v. Dialpad, Inc.*, 372 F. Supp. 3d 988, 996 (N.D. Cal. 2019), a district court considered a claim for a private branch exchange (PBX) that included a server "configured to receive a message sent over the Internet to the identified subscriber and to send the message over the Internet to one or more devices according to the distribution rules associated with the identified subscriber."  The court explained that the claim tracked human activity:

> Likewise, here, by referencing a department roster, a person could readily determine whether a message comes from within that department or from an outsider and then use a set of distribution rules to route copies of that message to appropriate department members. A person could also assign a reference number to the message and keep a file containing all messages associated with that reference number. And a person could, for messages sent to an outsider, replace the sender's identifying information with that of the department only.

*Id.* at 997.  Although the plaintiff asserted that the claim was designed to work with text messages in real time, because the claim did not include any improvement in computer capabilities and neither the claim nor the specification quantified "real time," the claim was abstract under *Alice* step one.  *Id.*

Finally, in *Twilio, Inc. v. Telesign Corp.*, 249 F. Supp. 3d 1123, 1143 (N.D. Cal. 2017), a district court considered a claim for selecting a route for a message based on the results of previous message route selection. After analogizing the claim steps to routine human activities, the court concluded that the claim disclosed an abstract idea:

> Selecting the best option based on separately-received feedback is a fundamental activity that has long been performed by humans.  For example, a person choosing among dinner restaurants may select a restaurant based on diner reviews from a third-party service instead of soliciting information from the restaurants themselves.  As another example, a person wishing to send a package may select between FedEx, UPS, and USPS based on feedback in online forums from other customers who have used those services instead of getting information from FedEx, UPS, and USPS themselves.  Thus, selecting the best option based on separately-received feedback constitutes a "fundamental … practice long prevalent in our system."  *Alice*, [573 U.S. at 219] (citations and internal quotation marks omitted). As such, it is an abstract idea.

*Twilio*, 249 F. Supp. 3d at 1144.

As demonstrated by these cases, other courts have already ruled that a computer-based determination of a destination for an incoming communication from a plurality of possible destinations represents an abstract idea under *Alice* step one.  Therefore, assuming *arguendo* that this Court would similarly construe the asserted claims to be a computer-based determination of a destination for an incoming communication from a plurality of possible destinations, the claims nevertheless represent abstract ideas under *Alice* step one.  Therefore, there is no need to defer the *Alice* step one analysis until after claim construction.

3.    **Even if limited to routing calls to call center agents, the claims are still directed to an abstract idea.**

Even if the Court were to determine that the focus of each of the asserted claims was not merely (a) the routine human activity of picking a solution to a problem from a set of possible solutions or (b) the routine computer activity of selecting a destination for a message from a plurality of possible destinations, and instead was to limit the claims to the specific activity of routing a call arriving at a call center to one of a plurality of call center agents, the asserted claims are still merely abstract ideas.  First, the inventors admit that this is a routine call center activity:

> Typically, an Automatic Call Distribution (ACD) function is provided in conjunction with a computerized Private Branch Exchange (PBX). This ACD function enables a group of agents, termed ACD agents, to handle a high volume of inbound calls and simultaneously allows a queued caller to listen to recordings when waiting for an available ACD agent. The ACD function typically informs inbound callers of their status while they wait and the ACD function routes callers to an appropriate ACD agent on a first-come-first-served basis.

*E.g.*, '979 Patent at 2:35-44.

Further, other courts have already considered routing calls in a call center in the context of *Alice* step one.  In *RingCentral*, a district court analyzed the concept of routing telephone calls based on user-defined routing parameters.  372 F. Supp.3d at 999.  In finding the concept abstract, the court reasoned:

> As Dialpad persuasively argues, these are functions that humans have routinely performed and are therefore abstract.  *See, e.g., Intellectual Ventures I v. Symantec*, 838 F.3d at 1316-18 (finding a claim "receiving, screening, and distributing e-mail" to be abstract); *Twilio, Inc. v. Telesign Corp.*, 249 F.Supp.3d 1123, 1147 (N.D. Cal. 2017) ("[S]electing the best message routing option based on separately-transmitted feedback is a fundamental human activity, applied to a specific technical environment," and is "an abstract idea.").  For example, corporate executives might tell their assistants that calls be directed to their office phone number during certain hours, their mobile phone number during other hours, and their home phone number during still other hours.

*RingCentral*, 372 F.Supp.3d at 999.  The court concluded that this claim was directed to an abstract idea.  *Id.*

Similarly, in *Pragmatus Telecom, LLC*, 114 F. Supp. 3d at 200, a district court considered a claim reciting an automated call distribution system connecting a customer to a call center, via a server and using a customer terminal.  The court concluded that this was an abstract idea:

> At its essence, the claim is directed to the abstract idea of communication between a customer and a business using a call center, automated and obfuscated along the way using certain computer, telephonic and network services.  This invention might be faster, automated, and more streamlined using web pages, but the idea at its core is connecting customers to call centers.  Call centers, where customers call in to speak with live agents, are not new.  Nor did the patent claim they were. Call centers have existed for decades in the modern world, at the very least since the early 1980s.

*Id.*  Notably, the court addressed the plaintiff's argument that, under its proposed claim construction, the claim was not abstract:

> Plaintiff offers in its proposed claim constructions that call center means "[o]ne or more computer systems connecting live agents to customers through one or more communication channels."  Even if this use of "call center" requires computer systems and one or more communication channels, at its essence it is still a system of connecting customers to live agents.

*Id.* at n.4 (internal citations omitted).

Similarly, in *24/7 Customer, Inc. v. LivePerson, Inc.*, No. 15-CV-02897-JST, 2017 WL 2311272, at *2 (N.D. Cal. May 25, 2017), a district court considered claims for routing a call arriving at a call center to a customer service representative.  The court ruled that the claim and its dependent claims were "directed to the abstract idea of routing a call to a customer service agent based on information about the caller."  *Id.*  Therefore, assuming arguendo that this Court would similarly construe the asserted claims to be routing an inbound call to a call center agent, because the inventors described this idea as a "well known principle," and because other courts have already identified call routing as an abstract idea, the asserted claims represent abstract ideas under *Alice* step one.  Therefore, there is no need to defer the *Alice* step one analysis until after claim construction.

E.      **Analysis Under *Alice* Step Two**

1.      **The individual elements of the asserted claims fail to add an inventive concept to the claims' abstract idea.**

Even if the Court were to view any of the claims as limited to computer-implemented functionality, at most the asserted claims fall into the category of "apply it with a computer," and nothing else in the claims suggests anything but a generic computer.  *See Alice*, 573 U.S. at 223 ("mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention").

Second, even if the Court were to construe the claims most favorably to Plaintiff—that is, in a way that the claims are directed to methods for routing incoming call center calls to customer service agents as alleged in the exemplar claim charts—such limitations do not by themselves provide an inventive concept sufficient to make an otherwise abstract idea patentable.  *See, e.g., Intell. Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1320-21 (Fed. Cir. 2016) (abstract idea does not become non-abstract by requiring specific data structures and objects or by limiting invention to particular field of use or technological environment).

Third, the exemplar asserted claims are jargon-laden with complicated sounding words and phrases, including:

- "multivariate cost function" ('979 Patent, Claim 10)

- "multivalued scalar data" ('086 Patent, Claim 11)

But inclusion of technical language does not in itself provide an inventive concept that can rescue an otherwise abstract claim.  *E.g., ClearDoc Inc. v. RiversideFM Inc.*, No. CV 21-1422-RGA, 2022 WL 3355960, at *3 (D. Del. Aug. 15, 2022) ("seemingly technical language, such as 'media content,' 'control system,' 'communication session,' 'mobile device,' 'trigger signal,' 'data storage device,' and 'control signal' … amount to no more than generic computer

components"). Rather, the claim must provide a "concrete implementation" of how the "seemingly technical language" of the claim provides an inventive concept. *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1271 (Fed. Cir. 2016) ("The features set forth in the claims are described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent.").

The *Alice* step two analysis performed by the court in *24/7 Customer, Inc. v. LivePerson, Inc.*, No. 15-CV-02897-JST, 2017 WL 2311272 (N.D. Cal. May 25, 2017) is instructive here. One of those claims expressly disclosed the process for selecting the customer service representative based on the skills of the available representatives:

> A method for routing an incoming call to a customer service representative comprising the steps of:
>
> identifying the caller of the incoming call;
>
> retrieving a profile on the caller;
>
> comparing the caller profile with stored customer service representative profiles to determine which customer service representatives are more qualified to handle the incoming call;
>
> ranking the customer service representatives that can best meet the caller's needs;
>
> routing the incoming call to a selected highest ranked customer service representative; and
>
> automatically updating, at the completion of the call, the caller profile and the selected customer service representative profile with information regarding the success of the call.

*Id.* at *2. After acknowledging the overlap between its step one and step two analysis,[2] the court concluded:

---

[2] *See 24/7 Customer, Inc.*, 2017 WL 2311272 at *3-4 ("As a preliminary matter, arguments regarding improvements go to whether the claims contain an inventive concept, and are therefore better suited to the second step of the *Alice* inquiry. … In any event, these arguments fail because

Here, the claims do not provide for any specific implementation of this abstract idea—e.g., they do not specify the structure or content of the profiles, the technology that should be used to perform the comparison, or even how the profile information should be analyzed to achieve the proposed solution. … Rather, they simply recite a generalized solution in broad, functional language—namely, "retrieving," "comparing," and "ranking" information about the customer and representative. … In other words, the claims recite the **what** of the invention, but none of the **how** that is necessary to turn the abstract idea into a patent-eligible application.

*Id.* at *4 (emphasis in original) (citations and quotations omitted).  The same reasoning applies to the exemplar asserted claims, which make use of important-sounding details.  These claims recite the "what" of the invention but none of the "how" needed to provide for a patent-eligible claim.

For example, Claim 10 of the '979 Patent reads, in part:

determining an optimum target for each communication based on the communication classification and target characteristics using a multivariate cost function comparing at least three potential targets.

Dkt. 18-1 at 86:5-8.

Nothing on the face of this element explains (a) what metric distinguishes an optimum target from a non-optimum target, (b) how one is to classify a communication, or (c) what characteristics of the potential targets are relevant.  As such, irrespective of how the Court might ultimately construe the term "multivariate cost function," without details of a concrete implementation, inclusion of seemingly technical language does not add an inventive concept to the underlying abstract idea.  Put another way, claim 10 of the '979 Patent preempts all use of a multivariate cost function that uses any metric that defines "optimum" (e.g., optimum for caller, optimum for agent, optimum for phone service provider, etc.), any call classification (e.g., calling number, called number, digits entered in response to a VRU prompt, etc.), and any call center

---

the claims are not directed to a specific improvement or to a specific implementation of a solution to a problem.") (citations and quotations omitted).

agent characteristic (e.g., agent availability, agent skills, ACD team assignment, agent location, etc.).

The following tables, which assume that the Court would construe the exemplar asserted claims to limit them to a call center environment,[3] demonstrates the lack of any inventive concept in any individual element of the exemplar asserted claims:

| '979 Patent, Claim 10: A communications method comprising: | |
|---|---|
| (a) receiving a plurality of communications, each having associated classification information; | No concrete solution: What kind of information is associated with the communications? How are communications classified? |
| (b) storing information representing characteristics of a plurality of potential targets; | No concrete solution: What kind of characteristics are associated with the targets? Where do these characteristics come from? |
| (c) determining an optimum target for each communication based on the communication classification and target characteristics using a multivariate cost function comparing at least three potential targets; and | No concrete solution: From whose perspective is the optimum target determined? How does one distinguish an optimum target from a non-optimum target? What is the relationship between the communication classifications and the target characteristics? |
| (d) routing the communication to the optimum target, | Picking one solution from many is the abstract idea from *Alice* step one. |
| said determining step and said routing step being performed within a common operating environment. | Limiting the method to a specific technical environment does not by itself provide the inventive concept to rescue an abstract idea. |

| '086 Patent, Claim 11: A method for matching a first entity with a second entity, comprising: | |
|---|---|
| storing a plurality of multivalued scalar data representing inferential targeting parameters for the first entity; | No concrete solution: What are the parameters of interest for the first entity? |
| storing a plurality of multivalued scalar data of each of the plurality of second entities, representing inferential targeting parameters for a plurality of second entities; | No concrete solution: What are the parameters of interest for the first entity? |

---

[3] Such a claim construction ruling would likely violate the fundamental tenet of claim construction that forbids importation of limitations from the specification into the claims. *See, e.g., Identity Sec. LLC v. Apple Inc.*, No. 1:22-CV-58-LY, 2022 WL 16641851, at *7 (W.D. Tex. Nov. 2, 2022) (court "may read claims in view of the specification, but it cannot import limitations from the specification into the claims") (citation omitted).

| '086 Patent, Claim 11: A method for matching a first entity with a second entity, comprising: | |
|---|---|
| performing using an automated processor, based on at least the stored plurality of multivalue scalar data, an economic optimization seeking to maximize a normalized economic surplus of a respective mutually exclusive match of the first entity with the second entity, in conjunction with an opportunity cost of the unavailability of the second entity as a result of the match; and | Limiting the method to a generic computer does not by itself provide the inventive concept to rescue an abstract idea. <br> No concrete solution: From whose perspective is the solution economically optimized? What is the relationship, if any, between the multivalue scalar data of the first entity and the multivalue scalar data of the second entity? What is the process from going from a "plurality of second entities" to "the second entity?" |
| outputting a signal in dependence on the optimization. | No concrete solution: What kind of a signal? How does the signal relate to the optimization?) <br> Alternatively, picking one solution from many is the abstract idea from *Alice* step one. |

Therefore, none of the individual elements meaningfully add any inventive concept to the underlying abstract idea.

**2.    The asserted claims, when taken as a sequence, fail to provide an inventive concept to the claims' disclosed abstract idea.**

In *Two-Way Media*, the panel considered a claim which used a conventional ordering of steps—"data are first processed, sent, and once sent, information about the transmission is recorded"—and concluded that the claims failed to describe a specific, discrete implementation of the abstract idea sufficient to qualify for eligibility under §101. 874 F.3d at 1341. Assuming again that the Court construes the claims most favorable to Plaintiff, each of the exemplar asserted claims sets out steps in the only chronological order possible: A call arrives at a call center, the call center software picks a destination from a set of potential destinations based on some business logic, and then the call is routed to the selected destination. Therefore, the individual elements taken as an ordered sequence do not add an inventive concept to the underlying abstract idea.

III.      **CONCLUSION**

For the foregoing reasons, the claims of the Asserted Patents are abstract ideas under *Alice*

step one and lack any inventive concept under *Alice* step two.  Further, because the result of the

*Alice* analysis is the same if the claims are construed most favorably for Plaintiff—namely, in

accordance with Plaintiff's own exemplar claim charts—there is no need to defer ruling on this

Motion until after claim construction.  Therefore, Radisson respectfully asks this Court to dismiss

this lawsuit.

Dated: January 19, 2024                         Respectfully submitted,


                                                /s/ Eric H. Findlay
                                                Eric H. Findlay
                                                State Bar No. 00789886
                                                Brian Craft
                                                State Bar No. 04972020
                                                FINDLAY CRAFT, P.C.
                                                7270 Crosswater Avenue, Suite B
                                                Tyler, Texas 75703
                                                Telephone: (903) 534-1100
                                                Email: efindlay@findlaycraft.com
                                                Email: bcraft@findlaycraft.com

                                                Barry J. Herman (*pro hac vice* to be filed)
                                                Maryland Federal Bar No. 26061
                                                WOMBLE BOND DICKINSON (US) LLP
                                                100 Light St, 26th Floor
                                                Baltimore, MD 21202
                                                Telephone: (410) 545-5830
                                                Email: Barry.Herman@wbd-us.com

                                                Preston H. Heard (*pro hac vice* to be filed)
                                                Georgia Bar No. 476319
                                                WOMBLE BOND DICKINSON (US) LLP
                                                271 17th Street, NW, Suite 2400
                                                Atlanta, GA 30363
                                                Telephone: (404) 888-7366
                                                Email: Preston.Heard@wbd-us.com

                                                *Attorneys for Defendant Radisson Hospitality,*
                                                *Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby confirms that on January 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

<u>/s/ Eric H. Findlay</u>
Eric H. Findlay